**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**NEWMAN,** *et al.*                                                            **CIVIL ACTION**

**VERSUS**                                                                       **No. 06-4668**

**LEXINGTON INSURANCE COMPANY,** *et al.*                   **SECTION: I/1**


<u>**ORDER AND REASONS**</u>

Before the Court is a motion to dismiss, or in the alternative, to compel appraisal and stay litigation pending appraisal filed on behalf of defendant, Lexington Insurance Company ("Lexington"). For the following reasons, defendant's motion to stay the proceedings is **GRANTED**, and defendant's motion to dismiss is **DENIED.**

*BACKGROUND*

Plaintiffs, Harold and Carol Newman and Kim Nicholas, had homes and businesses that suffered damage when Hurricane Katrina made landfall in the New Orleans area on August 29, 2005.[1] These properties were insured by defendant Lexington.[2] Plaintiffs filed a class action lawsuit with the Court on August 24, 2006, on behalf of themselves and all others similarly situated, alleging that defendant intentionally and negligently adjusted plaintiffs' property,

---

[1] Rec. Doc. No. 1, p. 4.

[2] Rec. Doc. No. 1, p. 4.

1

business, commercial, and flood insurance claims.[3]  Plaintiffs argue that the insurance payments

they received were insufficient because defendant deliberately priced items below their market

value and denied payment for industry standard items.[4]  On October 27, 2006, Lexington

invoked the appraisal provision in its insurance policy to set the amount of loss.[5]

     Lexington filed this motion on November 20, 2006,[6] arguing that the appraisal provision

precludes the present litigation.  Plaintiffs filed a memorandum in opposition on December 12,

2006.[7]  Plaintiffs make two counterarguments:  1) that the appraisal process is a "useless and

futile process" that would set the amount of loss, therefore unfairly precluding them from

properly determining the amount of loss; and 2) the terms of the contract clearly indicate that the

appraisal provision is a pre-judicial administrative mechanism.[8]

***LAW AND ANALYSIS***

**I. Standard of Law**

*A. Motion to Dismiss under Rule 12(b)(6)*

     Pursuant to Rule 12(b)(6), a district court cannot dismiss a complaint for failure to state a

claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."  *Conley v.*

*Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Blackburn v. City of*

---

[3] Rec. Doc. No. 1, p. 1.

[4] Rec. Doc. No. 1, p. 3.

[5] Rec. Doc. No. 8-8, p. 1.

[6] Rec. Doc. No. 8-1.

[7] Rec. Doc. No. 17.

[8] Rec. Doc. No. 17, pp. 2-3.

2

*Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The Court will not look beyond the factual allegations in the complaint to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing a claim, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *See Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)) (alteration in original).

The "complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). A plaintiff "is merely required to provide, in his complaint, a 'short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.'" *Lewis v. Fed. Reserve Bank of Atlanta-New Orleans Branch,* 04-1452, 2004 WL 2035006, at *3 (E.D. La. Sept. 10, 2004) (Livaudais, J.) (quoting *Conley,* 355 U.S. at 47, 78 S. Ct. at 103). A complaint must allege sufficient facts for an inference to be drawn that the elements of the claim exist. *Walker v. South Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990).

B. *Motion to Stay the Proceedings*

The Court is given "wide discretion to control the course of litigation, which includes

3

authority to control the scope and pace of discovery." *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990) (*citing In re Evangeline Refining Co.*, 890 F.2d 1312, 1320 (5th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)); *Smart v. Ohiku*, No. 05-1056, 2005 U.S. Dist. LEXIS, at *8 (E.D. La. Aug. 15, 2005) (Duval, J.).  This allows the Court "general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).  The stay must not be of an "immoderate or of an indefinite duration."  *Id.*  Courts have granted stays to allow the parties to complete the appraisal process.  *Bullard Bldg. Condo. Ass'n v. Travelers Prop. Cas. Co. of Amer.*, No. 06-1194, 2006 U.S. Dist. LEXIS 70674, at *2-4 (M.D. Fla. Sept. 25, 2006); *Childs v. State Farm Fire & Cas. Co.*, 899 F. Supp. 613, 616 (S.D. Fla. 1995).

## II. Discussion

### A. Validity of the Appraisal Provision

Defendant's first contention is that the appraisal provision is valid and enforceable.[9] Plaintiffs allege that the appraisal process is "useless and futile" and a waste of resources because of the current lawsuit.[10]  Courts have consistently held that appraisal provisions in insurance policies are enforceable.  *See, e.g.*, *Pa. Lumbermens Fire Ins. Co., v. Barfield,* 138 F. 2d 365, 366-67 (5th Cir. 1943) (upholding appraisal provision in a fire insurance contract); *Fourchon Docks, Inc. v. Nat'l Union Fire Ins. Co.*, No. 86-2267, 1988 U.S. Dist. LEXIS 3034, at *21 (E.D. La. Apr. 6, 1988) (Wicker, J.) ("[S]tipulations in insurance policies providing for an appraisal in case there is a disagreement as to the amount of the loss are clearly valid in

---

[9] Rec. Doc. No. 8-2, pp. 8-9.

[10] Rec. Doc. No. 17, p. 2.

Louisiana."); *Hilltop Bowl, Inc. v. U.S. Fid. & Guar. Co.*, 259 F. Supp. 649, 650-51 (W.D. La. 1966) (finding appraisal provision valid where the policy did not contain a mandatory arbitration clause that could affect the jurisdiction of the court). The appraisal provision would not divest this Court of jurisdiction. *See Fourchon Docks*, 1988 U.S. Dist. LEXIS 3034, at *21 (citing *Branch v. Springfield Fire & Marine Ins. Co.*, 4 So. 2d 806, 809 (La. 1941); *Sevier v. U.S.F. & G.*, 485 So. 2d 132, 135 (La. App. 2d Cir. 1986); *Girard v. Atl. Mut. Ins. Co.*, 198 So. 2d 444, 447 (La. App. 4th Cir. 1967)).

The appraisal provision in this case requires that the two parties dispute the amount of loss before appraisal can be requested by either party.[11] Lexington invoked the appraisal process after it was evident that the two parties disputed the amount of loss.[12] Plaintiffs offer no evidence that Lexington was aware of their disagreement as to the amount of the claim before plaintiffs filed their action. Plaintiffs contend that it would be a "useless and futile process" to have appraisal because it would definitively set the amount of loss.[13] Plaintiffs' argument, however, fails to demonstrate how setting the amount of loss would render the appraisal provision unenforceable, and they provide no citation to authority to support their contention.

B. *Whether Plaintiffs' Lawsuit Precludes Appraisal*

---

[11] Rec. Doc. No. 8-4, p. 21. The appraisal provision provides, in full: "Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the 'residence premises' is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will: a. Pay its own appraiser; and b. Bear the other expenses of the appraisal and umpire equally."

[12] Rec. Doc. No. 8-8, p. 1.

[13] Rec. Doc. No. 17, p. 2.

Defendant also argues that plaintiffs' lawsuit does not preclude either party from requesting appraisal.[14]  Defendant argues that the insurance policy does not limit the time in which the appraisal provision can be invoked.[15]  Plaintiffs assert that "the appraisal provision merely sets forth a pre-judicial administrative mechanism to exchange estimates of damage merely for informational purposes."[16]

In *Maison Orleans I v. Liberty Mut. Fire Ins. Co.*, the defendant requested appraisal after the plaintiff had filed its lawsuit.  No. 06-2856, 2006 U.S. Dist. LEXIS 59522, at *2 (E.D. La. Aug. 22, 2006) (Vance, J.).  The *Maison* court held that appraisal was not warranted because the contract explicitly stated that the appraisal demand "will be made in writing within sixty (60) days after *our* receipt of proof of loss."  *Id.* at *12.  Judge Vance relied on the unambiguous terms in the contract to make her determination "that Liberty's request for appraisal was untimely and that [the plaintiff] was not required to submit to the appraisal procedure."  *Id.* at *13.  Unlike *Maison*, however, plaintiffs' insurance policy does not impose any explicit temporal limitation on a party's ability to request appraisal, and the Court can find no other evidence in the text of the policy to suggest that the parties intended there to be any such limitation.

Plaintiffs posit that appraisal is a pre-judicial administrative mechanism because the contract states that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after date of loss."[17]  The Court agrees with

---

[14] Rec. Doc. No. 19-2, pp. 3-4.

[15] Rec. Doc. No. 19-2, pp. 3-4.

[16] Rec. Doc. No. 17, p. 2.

[17] Rec. Doc. No. 17, p. 2.

defendant that this provision merely applies to judicial actions against Lexington.[18]  The

language that plaintiffs cite appears next to the heading "Suit Against Us"; this language is not

located in the appraisal provision.[19]  Moreover, the plain meaning of this provision indicates that

it is not meant to preclude appraisal requests after a judicial action has been initiated.  The "Suit

Against Us" provision requires that, prior to bringing a lawsuit, "the policy provisions have been

complied with."[20]  The policy, however, does not *require* appraisal; this is a voluntary process

that "either [party] *may* demand."[21]  Plaintiffs' argument with regard to the "Suit Against Us"

provision is unavailing.

   The only condition precedent to appraisal, then, is that the two parties dispute the amount

of loss.[22]  Other courts addressing this issue have held that appraisal must be invoked within a

reasonable time after a dispute as to the amount of loss arises.  *Terra Indus. Inc. v.

Commonwealth Ins. Co. of Am.*, 981 F. Supp. 581, 598-600 (N.D. Iowa 1997) (finding appraisal

must be invoked within a reasonable time after an impasse arises as to the value of the loss);

*Kester v. State Farm Fire & Cas. Co.*, 726 F. Supp. 1015, 1019 (E.D. Pa. 1989) ( "[T]he

timeliness of a demand for an appraisal in each case depends upon the circumstances as they

existed at the time the demand was made.") (citation and internal quotation omitted); *NE Fin.

Corp. v. Ins. Co. of N. Amer.*, 757 F. Supp. 381, 389 (D. Del. 1991) (finding no unreasonable

---

[18] Rec. Doc. No. 19-2, p. 3.

[19] Rec. Doc. No. 8-4, p. 21.

[20] Rec. Doc. No. 8-4, p. 21.

[21] Rec. Doc. No. 8-4, p. 21.

[22] Rec. Doc. No. 8-4, p. 21. "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss."  *Id.*

delay when defendant invoked appraisal process two weeks after plaintiff filed lawsuit).[23]

The Court finds that the arbitration clause was invoked within a reasonable time period. Defendant argues that the impasse occurred when the lawsuit was filed on August 24, 2006.[24] Defendant requested the appraisal process on October 27, 2006, approximately two months after plaintiffs' lawsuit was filed.[25]  Plaintiffs cite no specific evidence that it would be prejudiced if arbitration proceeded.  Moreover, courts have found that delays longer than two month may be reasonable.  *Terra*, 981 F. Supp. at 598-600 (holding appraisal valid when invoked approximately two months after an impasse arose); *Kester*, 726 F. Supp. at 1019 (holding eight month delay reasonable given the circumstances).  Because plaintiffs have not shown any reason why the appraisal provision in their insurance policy is invalid or why the might suffer prejudice as a result of this process, the Court finds that the appraisal process should proceed as provided for in the policy.

The Court has wide discretion when determining whether to stay claims pending the

---

[23]The *Terra* court also noted the "pre-emptive strike" problem that might arise if a party's lawsuit were held to preempt another party's appraisal demand:

> Under [the plaintiff's] proffered rule--a rule that the filing of a lawsuit always preempts appraisal-- an insured could always prevent appraisal by filing a proof of loss and immediately filing suit. Such a suit would be the insured's unilateral declaration that impasse had been reached and might be the insurer's first notice that negotiations had broken down.  If this were the rule, the insurer's only means to defeat the insured's "preemptive strike" lawsuit and to ensure appraisal of losses would be a "preemptive strike" of its own:  The insurer would have an incentive to hasten to declare an impasse and demand appraisal, perhaps even before final proof of loss is filed, to prevent the insured from filing suit first.  Surely such "preemptive strike" lawsuits by one party and preemptive declarations of impasse and demands for appraisal by the other were not what either the legislature or the parties intended . . . .

*Terra*, 981 F. Supp. at 600.

[24] Rec. Doc. No. 8-2, p. 4 ("Lexington was unaware of any disagreement with plaintiffs prior to being served with the Complaint.")

[25] Rec. Doc. No. 8-8, p. 1.

appraisal process.  *In re Ramu Corp.*, 903 F.2d at 318.  The appraisal provision provides, "[a]

decision agreed to by any two [of the two appraisers and the umpire] will set the amount of

loss."[26]  Appraisal may settle the dispute in this case, and the present lawsuit will be

administratively closed pending the parties' participation in the appraisal process.

 Accordingly,

 **IT IS ORDERED** that the motion to compel appraisal and stay litigation pending

appraisal filed on behalf of defendant, Lexington Insurance Company,[27] is **GRANTED**.

Defendant's motion to dismiss[28] is **DENIED**.

 **IT IS FURTHER ORDERED** that this case is hereby **administratively closed** while

the parties pursue appraisal.  The parties **shall** notify the Court immediately if they have reached

a settlement.  If, after the appraisal process has been completed, plaintiffs believe their claims are

still valid, plaintiffs may move to reopen the case.

 New Orleans, Louisiana, April____4th____, 2007.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[26] Rec. Doc. No. 8-4, p. 21.

[27] Rec. Doc. No. 8-2.

[28] Rec. Doc. No. 8-2.